Michele J. Beilke (State Bar No. 194098)
mbeilke@reedsmith.com
Julia Y. Trankiem (State Bar No. 228666)
jtrankiem@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2800
Los Angeles, California 90071
Telephone: 213.457.8000
Facsimile: 213.457.8080

Attorneys for Defendants
THE CHEFS' WAREHOUSE WEST COAST, LLC (erroneously sued as THE CHEFS' WAREHOUSE, INC.) and DEL MONTE CAPITOL MEAT COMPANY, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER FONTANA,

Plaintiff,

vs.

THE CHEFS' WAREHOUSE, INC., a Delaware corporation, individually and dba DEL MONTE CAPITOL MEAT COMPANY, LLC; DEL MONTE CAPITOL MEAT COMPANY, LLC, a Delaware limited liability company; and DOES 1-50, inclusive,

Defendants.

Case No.: ______________________

[Removed from Superior Court of California, County of Sonoma, Case No. SCV-259364]

**NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446 (DIVERSITY)**



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

PLEASE TAKE NOTICE that Defendants The Chefs' Warehouse West Coast, LLC (erroneously sued as The Chefs' Warehouse, Inc.) and Del Monte Capitol Meat Company, LLC ("Defendants") hereby remove to this Court the state court action described below.

In compliance with 28 U.S.C. § 1446(a), Defendants assert the following grounds for removal:

JURISDICTION AND VENUE ARE PROPER

1. This case is a civil action over which this Court has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), and is one that may be removed to this Court pursuant to 28 U.S.C. § 1441(b), because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000.

2. The Superior Court for the County of Sonoma, in which the action was originally filed, is located within the Northern District of California where this Notice of Removal is being filed. Therefore, this Notice of Removal is properly filed in the Northern District of California.

STATUS OF PLEADINGS AND PROCESSES

3. On or about August 26, 2016, Plaintiff Christopher Fontana ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of Sonoma, entitled *Christopher Fontana v. The Chefs' Warehouse, Inc., et al.*, Case No. SCV-259364 (hereinafter the "State Court Action").

4. In his Complaint, Plaintiff alleges the following claims against Defendants in connection with his severance agreement: (1) intentional misrepresentation; (2) promissory fraud; (3) negligent misrepresentation; (4) breach of contract; and (5) intentional infliction of emotional distress.

5. On October 10, 2016, Plaintiff served a copy of the Summons, Complaint, and related documents on Defendants.

6. On November 8, 2016, Defendant filed and served its Answer to the Complaint in the State Court Action.

7. All process, pleadings, and orders received or filed by Defendants in the State Court Action are attached hereto as follows:

| | |
|---|---|
| Exhibit A | Summons and Complaint |
| Exhibit B | Related Documents Enclosed with Summons and Complaint |
| Exhibit C | Defendant's Answer |

8. No additional papers or processes have been filed or received by Defendants in the State Court Action. To Defendants' knowledge, no further proceedings have occurred.

NOTICE TO STATE COURT AND PLAINTIFF

9. Promptly upon the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of the removal will be provided to counsel for Plaintiff, and a copy of this Notice of Removal will be filed with the Sonoma County Superior Court Clerk as required by 28 U.S.C. § 1446(d).

DEFENDANTS' REMOVAL IS TIMELY

10. This Notice is timely in that it is being filed within thirty (30) days of Defendants' receipt of Plaintiff's initial pleading. *See* 28 U.S.C. 1446(b). No other defendants have appeared in this action, as only additional Doe defendants have been named.

COMPLETE DIVERSITY OF CITIZENSHIP EXISTS

11. The parties are completely diverse in this matter, as Plaintiff is a citizen of California and Defendants are not citizens of California.

12. Diversity of citizenship exists as long as no plaintiff is a citizen of the same state as any defendant at the time the action was filed and at the time of removal. For purposes of removal, the citizenship of Doe defendants is disregarded, and only named defendants are considered. 28 U.S.C. § 1441(a); *see also Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998); (citing 28 U.S.C. § 1441(a)); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980).

Plaintiff's Citizenship

13. In the Complaint, Plaintiff alleges that he is a resident of Sonoma County, California, and was a resident of Sonoma County at the time of the breach of the contract alleged therein. (Compl. ¶ 2) Accordingly, at all times relevant to the instant action, Plaintiff was a citizen of the State of California. *See Lew v. Moss,* 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Defendants' Citizenship

14. The Chefs' Warehouse, Inc. is a Delaware corporation, organized under the laws of the State of Delaware and was so organized as of the date the Complaint in this case was filed, on August 26, 2016. The Chefs' Warehouse, Inc. has never been incorporated under the laws of the State of California. Declaration of Patricia Lecouras ("Lecouras Decl.") ¶ 3.

15. Defendant The Chefs' Warehouse West Coast, LLC (erroneously sued as The Chefs' Warehouse, Inc.) is a limited liability company organized under the laws of the State of Delaware and was so organized as of August 26, 2016. The Chefs' Warehouse West Coast, LLC is wholly owned by Chefs' Warehouse Parent, LLC, which is in turn wholly owned by The Chefs' Warehouse, Inc. Lecouras Decl. ¶ 4.

16. Chefs' Warehouse Parent, LLC is a limited liability company organized under the laws of the State of Delaware and was so organized as of August 26, 2016. Lecouras Decl. ¶ 5.

17. Defendant Del Monte Capitol Meat Company, LLC is a Delaware limited liability company, organized under the laws of the State of Delaware and was so organized as of August 26, 2016. Del Monte is wholly owned by Del Monte Capitol Meat Company Holdings, LLC, which is in turn wholly owned by Chefs' Warehouse Parent, LLC, which is in turn wholly owned by The Chefs' Warehouse, Inc. Lecouras Decl. ¶ 6.

18. Del Monte Capitol Meat Company Holdings, LLC is a limited liability company organized under the laws of the State of Delaware and was so organized as of August 26, 2016. Lecouras Decl. ¶ 7.

19. The principal place of business for The Chefs' Warehouse West Coast, LLC, Chefs' Warehouse Parent, LLC, The Chefs' Warehouse, Inc., Del Monte Capitol Meat Company, LLC, and Del Monte Capitol Meat Company Holdings, LLC is currently, and was as of August 26, 2016, located in Ridgefield, Connecticut. The corporate headquarters for these five entities is located at 100 East Ridge Road, Ridgefield, Connecticut 06877, which is where company business activities and decisions are made, directed, controlled and coordinated. Lecouras Decl. ¶ 8.

20. Therefore, at the commencement of this action, and at all times herein, Defendants The Chefs' Warehouse West Coast, LLC (erroneously sued as The Chefs' Warehouse, Inc.) and Del Monte Capitol Meat Company, LLC are and were citizens of Delaware and Connecticut for purposes of removal.

21. Based on the foregoing, diversity is established between Plaintiff and Defendants because Plaintiff is a citizen of California and Defendants are citizens of Delaware and Connecticut for purposes of removal.

Amount in Controversy

22. Removal is proper if, from the allegations in the Complaint and the Notice of Removal, it is more likely than not that the claims exceed $75,000. *Sanchez v Monument Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996). In determining whether the jurisdictional minimum is met, courts consider all recoverable damages, including emotional distress damages, punitive damages, statutory penalties, and attorneys' fees. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998). The State Court Action is one in which the alleged amount in controversy plainly exceeds the sum or value of $75,000, exclusive of interest and costs.

23. Plaintiff seeks contract damages of $100,000. (Compl. ¶¶ 20-21; *see id.* Prayer ¶ a.)

24. Plaintiff also seeks damages for "severe emotional distress." (Compl. ¶ 51; *see id.* Prayer ¶ c.) Although Plaintiff does not provide a precise amount regarding emotional distress damages, the Court may consider damage awards in other cases to establish the amount in controversy. *See Simmons v. PCR Technology,* 209 F. Supp. 2d 1029, 1033-34 (N.D. Cal. 2002). Courts have awarded substantial damages for emotional distress in other employment termination cases. *See, e.g., Bihun c. AT&T Info. Sys. Inc.*, 13 Cal. App. 4th 976, 997 (1993) ($662,000 for emotional distress), overruled on other grounds by *Lakin v. Watkins Assoc. Indus.*, 6 Cal. 4th 644 (1993); *Watson v. Dept. of Rehabilitation,* 212 Cal. App. 3d 1271, 1294 (1989) ($1,102,000 for emotional distress).

25. Plaintiff also seeks punitive damages. (Prayer ¶ d.) Punitive damages are included in calculating the amount in controversy. *Davenport v. Mutual Ben. Health & Acc. Ass'n,* 325 F. 2d 785, 787 (9th Cir. 1963); *see also State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003). A potential award of punitive damages, even if unspecified in the pleadings, can establish the requisite amount in controversy:

> [T]he court may consider punitive damages when determining the amount in controversy.... To establish probable punitive damages, defendant may introduce evidence of jury verdicts in cases involving analogous facts. [Citations.] To this end, defendant highlights jury verdicts with substantial punitive damage awards. *See, e.g., Prasad v.*



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

> *University of Cal. Davis Med. Ctr.*, JVR No. 802857 ($60,000 punitive damage award); *Carrol v. Interstate Brands Corp. dba Wonderbread, dba Hostess & dba Dolly Madison, et al.*, Cal.Super.Ct. for the County of San Francisco Case No. 995728, 1 C.E.L.M. 68 (Sept. 2000) ($121,000,000 punitive damage award); *Lane v. Hughes Aircraft Co.*, JVR No. 801112 ($40,000,000 punitive damage award).... [T]he jury verdicts in these cases amply demonstrate the potential for large punitive damage awards in employment discrimination cases. Although the facts of the instant action are far less egregious, defendant has met its burden of showing by a preponderance of the evidence that the amount in controversy should include a punitive damages award.

*Simmons*, 209 F. Supp. 2d at 1033 (race discrimination and wrongful termination case). Although Defendants deny Plaintiff's allegations, if Plaintiff were to prevail on his claims, the punitive damages alone could exceed the jurisdictional minimum.

26. Therefore, although Defendants deny Plaintiff's allegations, for purposes of this removal only, the amount in controversy clearly exceeds the jurisdictional minimum of $75,000.

WHEREFORE, having provided notice as required by law and based on the above, the above-entitled action should hereby be removed from the Superior Court of the County of Sonoma to this honorable District Court.

DATED: November 9, 2016

REED SMITH LLP

By: /s/ Julia Y. Trankiem
Julia Y. Trankiem
Attorneys for Defendants
THE CHEFS' WAREHOUSE WEST COAST, LLC (erroneously sued as THE CHEFS' WAREHOUSE, INC.) and DEL MONTE CAPITOL MEAT COMPANY, LLC

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**EXHIBIT A**

SARAH S. WRIGHT (SB # 161112)
THE WRIGHT LAW OFFICE
1629 Fifth Avenue
San Rafael, California 94901
Tel: 415-472-5900
Email: wrightlawmarin@gmail.com

Attorney for Plaintiff
CHRISTOPHER FONTANA

FILED
AUG 2 6 2016
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA
By ______ DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SONOMA

| | |
|---|---|
| CHRISTOPHER FONTANA,<br><br>Plaintiff,<br><br>v.<br><br>THE CHEFS' WAREHOUSE, INC., a Delaware Corporation, Individually and dba DEL MONTE CAPITOL MEAT COMPANY, LLC; DEL MONTE CAPITOL MEAT COMPANY, LLC, a Delaware Limited Liability Company; and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. SCV-259364<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. Intentional Misrepresentation**<br>**2. Promissory Fraud**<br>**3. Negligent Misrepresentation**<br>**4. Breach of Contract**<br>**5. Intentional Infliction of Emotional Distress**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff CHRISTOPHER FONTANA (hereinafter referred to as "Plaintiff" or "CHRIS") alleges:

1. CHRIS is a resident of Sonoma County, California and was a resident of Sonoma County at the time of the breach of the contract alleged herein.

2. On information and belief, Defendant THE CHEFS' WAREHOUSE, INC. ("CHEFS" or "Defendant") is and was, at all times relevant hereto, a Delaware Corporation that does business throughout the State of California as CHEFS and as DEL MONTE CAPITOL MEAT COMPANY, LLC.

3. On information and belief, Defendant DEL MONTE CAPITOL MEAT COMPANY, LLC ("DEL MONTE CAPITOL") is and was, at all times relevant hereto, a Delaware Limited Liability Company that does business throughout the State of California. Plaintiff is further informed and believes and thereon alleges that DEL MONTE CAPITOL is a wholly owned subsidiary of CHEFS.

4. The true names and capacities of the defendants named herein as Does 1 through 50, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who therefore sues such defendants by fictitious names pursuant to Cal. Code Civ. Proc. §474. Plaintiff is informed and believes and thereon alleges that the Doe defendants are subject to the jurisdiction of the courts of the State of California. Plaintiff will amend this Complaint to show such true names and capacities when they have been determined.

5. On information and belief, at all times herein mentioned, each Defendant was acting as an agent, servant and/or employee of the remaining Defendants and each other, and was acting within the scope of such agency or employment in doing the things herein alleged. Each Defendant, in doing the acts or in omitting to act as alleged in this complaint, was acting in the course and scope of his, her, or its actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each Defendant as agent were subsequently ratified and adopted by each other Defendant as principal.

**FACTS COMMON TO ALL CLAIMS**

6. On or about October 12, 1990, CHRIS commenced working for Del Monte Meat Company, a business that was originally founded in San Francisco, California in 1926.

7. As a condition of retaining his employment, on or about March 24, 2015, CHEFS and DEL MONTE CAPITOL required CHRIS to complete "new hire" papers for a position with CHEFS and DEL MONTE CAPITOL. Shortly thereafter, CHRIS received a written offer of employment dated March 30, 2015 from Patricia Lecouras, Chief Human

Resources Officer for CHEFS, for his current position of Plant Manager of DEL MONTE CAPITOL.

8. On or about April 7, 2015, CHEFS acquired DEL MONTE CAPITOL. CHEFS controls DEL MONTE CAPITOL and all actions to be taken by or on its behalf are taken by or on behalf of CHEFS.

9. On or about May 6, 2016, Bruce Luong, CHEFS' Executive Vice President, West Coast and Canada, approached CHRIS, telling him he would like to talk to him. In the presence of the Los Angeles Operations Manager and manager William Burch, Luong informed CHRIS that "we" are making this CHRIS's last day on the job. He stated that "we" know you are tired; this is your severance package, and "this will give you six months to get back on your feet." Luong advised CHRIS to go over the severance package with his lawyer.

10. A true and correct copy of the severance package referred to by Luong is attached hereto as Exhibit 1 and incorporated by reference hereto.

11. On May 23, 2016, CHRIS e-mailed Lecouras and requested that the amount of severance set forth in the severance package be increased from $100,000 to $160,000. True and correct copies of the May 23, 2016 e-mail and the subsequent e-mail communications between CHRIS and Lecouras described *infra* are attached hereto as Exhibit 2 and incorporated by reference hereto.

12. On May 24, 2016, Lecouras e-mailed a response to CHRIS stating:

> We are offering you a severance in the amount of $100,000 in consideration for your execution of the separation agreement.
>
> This offer is non-negotiable and will expire at 5 pm EST on Friday, May 27, 2016, if you do not accept it by then.

13. On May 25, 2016, CHRIS signed the severance agreement and transmitted it to Lecouras via UPS.

14. Lecouras confirmed on May 27, 2016 that she had received the signed separation agreement and stated: "We will be sending you a check next Thursday (after the 7 day rescind period)." (Exhibit 2.)

15. On June 1, 2016, Lecouras e-mailed CHRIS, stating "Due to information which has just come to our attention, we are rescinding our separation agreement and severance offer." (Exhibit 2.)

**FIRST CAUSE OF ACTION**
**Fraud and Deceit -- Intentional Misrepresentation**
**California Civil Code §§ 1572, 1573, 1709 and 1710.**
**Against CHEFS, DEL MONTE CAPITOL and Does 1-50**

16. Plaintiff restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

17. To induce CHRIS to sign a severance agreement on the terms set forth in the agreement, Luong represented to CHRIS that Defendants were offering CHRIS severance as a gesture of good will (i.e., "to give you six months to get back on your feet.")

18. Acting on behalf of CHEFS, DEL MONTE and DOES 1-50, and each of them, to induce CHRIS to sign the agreement proffered to him by Luong, Lecouras represented to CHRIS that the severance agreement was a "take it or leave it" offer. Lecouras further represented to CHRIS that upon her receipt of the signed offer, a check would be sent to him "next Thursday" (June 2, 2016).

19. Luong, CHEFS, DEL MONTE CAPITOL and DOES 1-50, and each of them, intended that CHRIS rely upon their representations. Luong and Lecouras held positions of authority in CHEFS, and CHRIS signed Exhibit 1 in reasonable reliance upon their representations, fully expecting the representations to be true.

20. The representations of Luong, CHEFS, DEL MONTE CAPITOL and DOES 1-50, and each of them, set forth hereinabove that CHRIS would be paid $100,000 after signing Exhibit 1 were false. Luong, CHEFS and DOES 1-50, and each of them, knew their

representations were false when they made them, or they made the representations recklessly and without regard for the truth.

21. CHEFS, DEL MONTE CAPITOL and DOES 1-50, and each of them, failed and refused, and continue to fail and refuse to pay CHRIS the $100,000 they promised to pay.

22. As a direct result of Defendants' foregoing false representations, CHRIS suffered and continues to suffer severe emotional distress.

23. Defendants' conduct was oppressive, fraudulent, and malicious, and Plaintiff is entitled to exemplary damages from them in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**Promissory Fraud**
**California Civil Code §§ 1572, 1573, 1709 and 1710.**
**Against CHEFS, DEL MONTE CAPITOL and Does 1-50**

24. Plaintiff restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

25. CHEFS, DEL MONTE CAPITOL and DOES 1-50, and each of them, promised to pay CHRIS $100,000 if he signed Exhibit 1and did not revoke it within eight days of signing.

26. At the time they offered to pay CHRIS $100,000, CHEFS, DEL MONTE CAPITOL and DOES 1-50, and each of them, did not intend to perform their promise.

27. CHEFS, DEL MONTE CAPITOL and DOES 1-50, and each of them, intended for CHRIS to rely upon their promise.

28. CHRIS reasonably relied upon the promises of CHEFS, DEL MONTE CAPITOL and DOES 1-50, and each of them, and signed the agreement on May 25, 2016. He never revoked the Agreement.

29. CHEFS, DEL MONTE CAPITOL and DOES 1-50, and each of them, did not pay CHRIS, as promised, and they have never paid CHRIS the $100,000 they promised to pay.

30. As a direct result of Defendants' foregoing false promise. CHRIS suffered and continues to suffer severe emotional distress.

31. Defendants' conduct was oppressive, fraudulent, and/or malicious, and Plaintiff is entitled to exemplary damages from them in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**Fraud and Deceit – Negligent Misrepresentation**
**California Civil Code §§ 1572, 1573, 1709 and 1710.**
**Against CHEFS, DEL MONTE CAPITOL and Does 1-50**

32. Plaintiff restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

33. To induce CHRIS to sign a severance agreement on the terms set forth in the agreement, Luong represented to CHRIS that Defendants were offering CHRIS severance as a gesture of good will (i.e., "to give you six months to get back on your feet.")

34. Acting on behalf of CHEFS, DEL MONTE CAPITOL and DOES 1-50, and each of them, to induce CHRIS to sign the agreement proffered to him by Luong, Lecouras represented to CHRIS that the severance agreement was a "take it or leave it" offer. Lecouras further represented to CHRIS that upon her receipt of the signed offer, a check would be sent to him "next Thursday" (June 2, 2016).

35. Luong, Lecouras, CHEFS, DEL MONTE CAPITOL and DOES 1-50, and each of them, intended that CHRIS rely upon their representations. Luong and Lecouras held positions of authority in CHEFS and DOES 1-50, and each of them, and CHRIS signed Exhibit 1 in reasonable reliance upon their representations, fully expecting the representations to be true.

36. The representations of Luong and Lecouras that CHRIS would be paid $100,000 after signing Exhibit 1 were false. Although Luong and Lecouras may have honestly believed that their representations were true, they had no reasonable grounds for believing that the statements were true when they made them.

37. CHEFS, DEL MONTE CAPITOL and DOES 1-50, and each of them, failed and refused, and continue to fail and refuse to pay CHRIS the $100,000 they promised to pay.

38. As a direct result of Defendants' foregoing false representations, CHRIS suffered and continues to suffer severe emotional distress.

**FOURTH CAUSE OF ACTION**
**Breach of Contract**
**Against CHEFS, DEL MONTE CAPITOL and Does 1-50**

39. Plaintiff restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

40. On or about May 6, 2016, Luong handed CHRIS Exhibit 1, which he represented to be a severance package, and advised CHRIS to go over the severance package with his lawyer.

41. The terms of the contract required that CHRIS indicate his acceptance by signing within twenty-one (21) days of his receipt of the contract.

42. On May 25, 2016, within the twenty-one days set forth in the contract for CHRIS to accept, he signed the contract and transmitted it in the manner and form required.

43. Through their agent and employee Lecouras, CHEFS, DEL MONTE CAPITOL and DOES 1-50, and each of them, admitted that they received CHRIS's timely acceptance of the terms and conditions of the contract and specified a date certain on which Defendants would perform their obligations and pay CHRIS the amount set forth in the contract. (Exhibit 2.)

44. CHRIS met all conditions required of him to be met pursuant to the terms of the contract, and Defendants affirmed that he had met all conditions required of him and further affirmed the contract by specifying the date that Defendants would send him the payment set forth in the contract.

45. CHEFS, DEL MONTE CAPITOL and DOES 1-50, and each of them, did not pay CHRIS the amount promised pursuant to the contract, thereby breaching the contract, and have refused to pay the amount due to CHRIS pursuant to the terms of the contract, despite CHRIS's demand for payment of the amount set forth in the contract.

46. As a direct result of Defendants' breach of their contract with CHRIS, CHRIS has been damaged in an amount to be proven at trial

47. Plaintiff has incurred and continues to incur attorney fees. Paragraph 11 of the contract provides for attorneys' fees to be awarded solely to Defendants on specified causes of action. Pursuant to Civil Code § 1717, in any action on a contract where the contract specifically provides that attorneys' fees and costs be awarded to one of the parties, the provision shall be construed to apply to the prevailing party, whether he is the party specified in the contract or not, and it shall apply to the entire contract. Accordingly, Plaintiff requests attorneys' fees.

**FIFTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**
**Against CHEFS, DEL MONTE CAPITOL and Does 1-50**

48. Plaintiff restates and realleges each and every paragraph of this Complaint going before or after this cause of action as if fully restated herein and incorporates them by this reference.

49. Defendants CHEFS, DEL MONTE CAPITOL and DOES 1-50, and each of them, engaged in outrageous conduct as set forth hereinabove by:

a. inducing CHRIS to sign it by telling him that Defendants knew that CHRIS was tired and the severance offered in the Agreement would give him six months to get back on his feet;

b. including terms in the contract that violate California law, telling him to consult with an attorney, and then telling him that the offer was non-negotiable;

c. assuring him that he would be paid eight days after he signed the agreement; and

d. "rescinding" the agreement the day before the date they had promised to send the check "due to information which has just come to our attention."

50. In doing the things set forth hereinabove, Defendants intended to cause CHRIS severe emotional distress.

51. As a result of Defendants' actions, as set forth hereinabove, CHRIS suffered severe emotional distress.

52. Defendants' conduct was oppressive and/or malicious, and Plaintiff is entitled to exemplary damages from them in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a. For contract damages of $100,000;

b. For interest on contract damages from June 2, 2016 pursuant to Civil Code § 3287 or, if malice or fraud are found, for interest pursuant to Civil Code § 3288;

c. For emotional distress damages pursuant to the First, Second, Third and Fifth Causes of Action;

d. For punitive or exemplary damages pursuant to the First, Second and Fifth Causes of Action;

e. For reasonable attorneys' fees on the Fourth Cause of Action;

f. For reasonable attorneys' fees on any and all causes of action pursuant to any applicable statute;

g. For pre-judgment interest on any and all causes of action pursuant to any applicable statute;

h. For costs of suit; and

i. For such other and further relief as the court may deem just and proper.

DATED: August 24, 2016

THE WRIGHT LAW OFFICE

By: Sarah S. Wright
Attorney for Plaintiff
CHRISTOPHER FONTANA

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial.

DATED: August 24, 2016

THE WRIGHT LAW OFFICE

By: Sarah S. Wright
Attorney for Plaintiff
CHRISTOPHER FONTANA

# CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Confidential Settlement Agreement and General Release ("Agreement") is hereby entered into by Christopher Fontana, for himself and on behalf of his heirs, estate, representatives, successors, assigns and agents ("Fontana"), and Del Monte Capitol Meat Company, LLC., and its past or present, affiliates, predecessors, related entities, directors, benefit plans, assigns, officers, employees, agents, and attorneys (collectively, "Del Monte"). Fontana and Del Monte collectively are referred to herein as the "Parties."

## RECITALS

A. Fontana acknowledges that his employment with Del Monte ended on May 6, 2016.

B. Fontana and Del Monte desire to settle fully and finally, and with prejudice, the disputes and differences between them referred to herein, including, but in no way limited to, any of Fontana's disputes or differences that may have arisen out of his employment with Del Monte and the cessation of that employment.

C. Fontana and Del Monte acknowledge that the execution of this Agreement is the result of compromise between the Parties, that this Agreement is entered into in good faith by the Parties, and that this Agreement shall never be considered at any time or for any purpose as an admission of liability by Del Monte.

## AGREEMENT

NOW THEREFORE, in consideration of the promises and covenants set forth below, Fontana and Del Monte, each intending to be legally bound, hereby agree as follows:

1. Consideration. Del Monte shall pay Fontana the total sum of One Hundred Thousand Dollars and Zero Cents ($100,000.00) (the "Settlement Sum"), in full and final settlement of any and all claims that Fontana has raised or could have raised against Del Monte. The Settlement Sum shall be paid in one check in the gross amount of $100,000.00, less applicable state and federal withholdings, made payable to Christopher Fontana. This amount will be paid within fifteen (15) business days of the Effective Date of this Agreement, as defined in and pursuant to the conditions in Section 17.

2. Acknowledgement of Complete and Adequate Consideration. Fontana agrees that he accepts the consideration set forth in Section 1 of this Agreement as adequate and as the full, final and complete settlement of all possible claims which he might have as described in Section 3 of this Agreement. Fontana also acknowledges and agrees that he would not otherwise be entitled to the consideration set forth in Section 1 were it not for his covenants, promises, and agreements set forth hereunder and that the consideration provided for in Section 1 is for Fontana's promises and obligations under this Agreement. Fontana expressly understands, agrees and covenants that, other than the payments set forth herein, Del Monte shall not be required to make any further payment, for any reason whatsoever, including any payment of attorneys' fees or costs, to him or to any person, attorney, representative, heir or estate, regarding any claim or right whatsoever which might possibly be asserted by him or on his behalf up to the date he executes this Agreement. Fontana acknowledges that there are no other undisputed amounts, including, without limitation, wages, commissions, vacation pay,

compensation and other benefits, due and owing to him that he has received all wages, commissions, vacation pay compensation and benefits due to him from Del Monte and that Del Monte shall owe Fontana nothing further once Fontana receives the consideration described in Section 1.

3. General Release of All Claims. As a material inducement to Del Monte to enter into this Agreement, Fontana does hereby, for himself and his spouse, children, heirs, estate, executors, administrators, successors, representatives, assigns, and all persons and entities in privity with him (the "Fontana Releasees") irrevocably and unconditionally release, forever discharge, and covenants not to sue or bring any legal action against Del Monte or any of its related or affiliated entities or successors, or any of their current or former officers, directors, managers, employees or representatives, with respect to any and all individual claims and causes of action of any nature, both past and present, known and unknown, foreseen and unforeseen, at law or in equity, which Fontana has or which could be asserted on his behalf by any other person, or entity, resulting from or relating to any act or omission of any kind occurring on or before the date of the execution of this Agreement. In the event Fontana breaches this covenant not to sue, he agrees to pay all costs and attorneys' fees incurred by Del Monte in defending such action. Fontana understands and agrees that this Release includes, but is not limited to, the following (collectively, the "Fontana Claims"):

a. All claims and causes of action arising under contract, tort, or other common law, including, without limitation, breach of contract; promissory estoppel; detrimental reliance; wrongful discharge; negligence; negligence per se; gross negligence; negligent hiring; negligent supervision; negligent retention; false imprisonment; assault and/or battery; intentional infliction of emotional distress; defamation; slander; libel; fraud; misrepresentation and/or invasion of privacy; breach of any covenants of good faith and fair dealing; breach of duty; conversion; loss and/or interference with any type of third-Party relationship; and/or personal, physical, mental, emotional, and/or property damages or losses;

b. All claims and causes of action arising under any and all federal, state, local, county, municipal and/or common law statutes, laws, regulations, rules, and/or ordinances, including, without limitation, the National Labor Relations Act; the California Labor Code; Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991, 42 U.S.C § 1981 et seq.; the Occupational and Safety Health Act; the Family and Medical Leave Act; the Age Discrimination in Employment Act; the Older Worker Benefits Protection Act; the Americans with Disabilities Act; the Rehabilitation Act of 1973; the Employee Retirement Income Security Act of 1974; the Fair Labor Standards Act; the California Fair Employment and Housing Act, California Government Code § 12900 et seq.; California Family Rights Act, Cal. Gov't Code § 12945.1 et seq. (family/medical leave); Section 1981 of the Civil Rights Act of 1866; the Equal Pay Act of 1963, 29 U.S.C. § 206; the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), 42 U.S.C. § 1395(c); and/or claims under the Constitutions of the United States and/or the State of California;

c. All claims and causes of action for claims of misclassification as exempt, meal or rest period penalties or pay, past or future loss of wages including regular and overtime pay, salary, compensation, commission, bonuses, expenses, reimbursements, holidays, vacations, and/or benefits, expenses, damages for pain and suffering, emotional distress

damages, liquidated damages, punitive/exemplary damages, compensatory damages, attorneys' fees, interest, court costs, physical or mental injury, damage to reputation, damage to credit, and any other injury, loss, damage or expense, or any other legal or equitable remedy of any kind whatsoever and, in this regard, Fontana acknowledges and agrees that he has been paid for all undisputed wages and other employment-related benefits and expenses due or owing to him as a result of his employment with Del Monte;

d. All claims and causes of action arising out of or in any way connected with, directly or indirectly, Fontana's employment at Del Monte, or any incident thereof, including, without limitation, his treatment by Del Monte, the terms and conditions of Fontana's employment, Fontana's separation from employment, and Fontana's efforts to find employment following his separation from Del Monte;

e. All claims and causes of action of any kind or character which could have been alleged in any lawsuit or administrative charge, claim, or proceeding that could have been filed against Del Monte by Fontana; and

f. All claims and causes of action by Fontana that Del Monte has acted unlawfully or improperly in any manner whatsoever.

Fontana also acknowledges and covenants that he has not sustained any work-related injury or illness during his employment with Del Monte. Notwithstanding anything in this Release to the contrary, Fontana is not waiving any rights that, under the law, cannot be waived.

The Parties understand that this Release also does not prohibit Fontana from filing an administrative charge of alleged employment discrimination under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Equal Pay Act, or the Age Discrimination in Employment Act. Fontana does, however, waive his right to monetary, injunctive, or other recovery should any federal, state or local administrative agency or any other person or entity pursue any claims on his behalf arising out of or relating to his employment with and/or separation from employment with Del Monte. This means that by signing this Release, Fontana will have waived any right to obtain a recovery if an administrative agency or any other person or entity pursues a claim against Del Monte based on any actions taken by Del Monte up to the date of the signing of this Release, and that Fontana will have released Del Monte of any and all claims of any nature arising up to the date of the signing of this Release.

4. Fontana's Release of Unknown Claims. Fontana agrees that there is a risk that any injury that he may have suffered by reason of Del Monte's relationship with Fontana might not now be known, and there is a further risk that said injuries, whether known or unknown at the date of this Agreement, might possibly become progressively worse, and that as a result thereof further damages may be sustained by Fontana. Nevertheless, Fontana desires to forever and fully release and discharge Del Monte and understands that by the execution of this Agreement, no further claims for any such injuries that existed at the time of the execution of this Agreement may ever be asserted by the Fontana Releasees.

Fontana expressly waives and relinquishes all of the rights and benefits afforded to him by Section 1542 of the Civil Code of the State of California and does so understanding and acknowledging the *significance of such specific waiver of Section 1542. Section 1542 of the Civil Code of the State of* California states as follows:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."**

Thus, notwithstanding the provisions of Section 1542, and for the purpose of implementing a full and complete release and discharge of all Parties, Fontana expressly acknowledges that this Agreement is intended to include in its effect, without limitation, all Fontana Claims that Fontana knows or does not know or suspect to exist in his favor against Del Monte at the time of execution hereof, and that this Agreement contemplates the extinguishment of any such Fontana Claim or Claims.

5. No Future Obligations. Fontana agrees that his employment with Del Monte is terminated effective May 6, 2016 under the terms and conditions of this Agreement. He agrees that Del Monte will never be obligated to consider him for employment, employ, reinstate or rehire him. Fontana also agrees not to seek or accept employment or any position of any kind with Del Monte. If Fontana seeks assignment, reassignment, or employment in violation of this section and is assigned to or hired by Del Monte, Fontana agrees that Del Monte shall have a legitimate and valid reason to terminate Fontana as soon as it learns of the assignment or hiring or at any time thereafter. This express waiver of any present or future opportunity or right to employment is a material and indispensable condition of this Agreement

6. Return of Company Property. Fontana represents that he has returned to Del Monte all Company property, including without limitation, electronic devices, mailing lists, reports, files, memoranda, records, computer hardware, software, credit cards, door and file keys, computer access codes or disks and instructional manuals, and other physical or personal property which Fontana received or prepared or helped prepare in connection with his employment with Del Monte, and that Fontana will not retain any copies, duplicates, reproductions or excerpts thereof.

7. Affirmations. Fontana specifically covenants that he has not filed or caused to be filed any lawsuit, complaint, or charge with respect to any claim this Agreement purports to release.

8. No Admission of Liability. Fontana understands and agrees that Del Monte expressly denies that it harmed him or treated him unlawfully, unfairly or discriminatorily in any way. Neither this Agreement nor the implementation thereof shall be construed to be, or shall be, admissible in any proceeding as evidence of an admission by Del Monte of any violation of or failure to comply with any federal, state or local law, ordinance, agreement, rule, regulation or order. The preceding sentence does not preclude introduction of this Agreement by Del Monte to establish that Fontana's claims were resolved and released according to the terms of this Agreement or by Del Monte to establish any breach of this Agreement.

9. Confidentiality. Fontana expressly understands and agrees that, except as required by law, the following shall be kept completely confidential by him and shall not be revealed to any person or entity: the existence of this Agreement; its terms and conditions, including that any sums were paid to him; and any and all settlement discussions that have occurred ("Confidential Information"). Fontana shall not discuss, disclose or reveal any of the Confidential Information directly or indirectly, to any person or entity other than his spouse, attorneys, tax advisor or the IRS provided that, prior to disclosure, such individuals agree not to reveal the Confidential Infounation. Fontana warrants that prior to signing this Agreement he has not revealed any Confidential Information to anyone other than his spouse and attorneys.

10. Non-Disparagement. Fontana agrees to not make disparaging statements about Del Monte, his employment with Del Monte, or the termination of that employment.

11. Remedy for Breach. Del Monte shall be entitled to have the provisions of Sections 9 and 10 of this Agreement specifically enforced through injunctive relief, without having to prove the adequacy of the available remedies at law, and without being required to post bond or security, it being acknowledged and agreed that such breach will cause irreparable injury to Del Monte and that money damages will not provide an adequate remedy to Del Monte. Moreover, Fontana understands and agrees that if he breaches any provisions of this Agreement, including but not limited to commencing, joining in, or in any other manner attempting to assert any claim released herein, in addition to any other legal or equitable remedy Del Monte may have, Del Monte shall be entitled to recover any payments made to Fontana or on Fontana's behalf under Section 3hereof, and Fontana shall reimburse Del Monte for all its reasonable attorneys' fees and costs incurred by it arising out of any such breach.

12. Entire Agreement. The Parties understand, covenant, and agree that this Agreement constitutes the entire agreement relating to the matters stated herein, that there are no other agreements, covenants, promises, or arrangements between Fontana and Del Monte relating to the matters covered by this Agreement, that the terms and conditions of this Agreement cancel and supersede any prior agreements, promises, representations or understandings that may have existed between Fontana and Del Monte with respect to all matters covered by this Agreement, that no other promise or inducement has been offered to either party except as set forth herein, and that this Agreement is binding upon all Parties, and their respective heirs, executors, administrators, successors and assigns. Notwithstanding the foregoing, Fontana acknowledges and agrees that all of his contractual and other post-termination obligations with respect to non-competition, confidentiality and trade secrets, and non-solicitation remain in full force and effect. Fontana acknowledges that he has not relied on any representations, promises or agreements of any kind made to him in connection with his decision to accept this Agreement.

13. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of California, without reference to principles of conflicts of laws.

14. Binding Effect of Agreement. This Agreement shall be binding upon all Parties hereto and upon their respective spouses, heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of Del Monte.

15. Construction. This Agreement was negotiated between the Parties and shall not be construed against any party.

16. Severability; Invalidation of Any Term. If any term or provision of this Agreement is determined by a court of competent jurisdiction to be void or invalid at law, then only that term or provision as is determined to be void or invalid shall be stricken from this Agreement, and this Agreement shall remain in full force and effect in all other respects at the sole option of Del Monte.

17. Consultation with Attorney, Period to Consider and Revoke. Fontana expressly warrants that he was advised in writing to consult with an attorney prior to executing this Agreement. Fontana acknowledges that he has been afforded the opportunity to consider this Agreement for a period of twenty-one (21) days, that he has carefully read it, that he understands completely its contents, that he had an opportunity for an attorney to explain those contents to him, and that he has executed this Release of his own free will, act, and deed. Fontana has a period of seven (7) days following his execution of this Release (the "Revocation Period") in which to revoke it. To be a valid revocation, Fontana must mail written notice that he revokes this Agreement to Patricia Lecouras, The Chefs' Warehouse, Inc., 100 East Ridge Road, Ridgefield, Connecticut 06877, prior to the expiration of the Revocation Period. In the event that Fontana revokes this Agreement in accordance with this paragraph, this Agreement will not be effective or enforceable, and Del Monte will be free from any and all promises and obligations under this Agreement, including any obligation to pay Fontana pursuant to Section 1, above. This Agreement will be effective and forever enforceable on the eighth (8th) day following Fontana's execution hereof (the "Effective Date").

INTENDING TO BE LEGALLY BOUND, Christopher Fontana and Del Monte each knowingly and voluntarily execute this Confidential Settlement Agreement and General Release as of the dates set forth below.

**CHRISTOPHER FONTANA**

_______________________ 5/25/2016
Date

**DEL MONTE CAPITOL MEAT COMPANY, LLC.**

_______________________ _______________________
By: Date

**From:** Patricia Lecouras <PLecouras@chefswarehouse.com>
**Date:** June 1, 2016 at 8:57:33 AM PDT
**To:** Chris Fontana <chrisfontana68@gmail.com>
**Subject: RE: Chris Fontana**

Chris,
Due to information which has just come to our attention, we are rescinding our separation agreement and severance offer.
Regards,
Pat

-----Original Message-----
From: Chris Fontana [mailto:chrisfontana68@gmail.com]
Sent: Tuesday, May 31, 2016 6:26 PM
To: Patricia Lecouras <PLecouras@chefswarehouse.com>
Subject: Re: Chris Fontana

Please send me a check , I don't want is direct deposited. My new address is p.o. Box 820 Graton C,A 95444 Regards Chris Fontana

Sent from my iPhone

> On May 27, 2016, at 10:43 AM, Patricia Lecouras <PLecouras@chefswarehouse.com> wrote:
>
> Hi Chris,
>
> Yes, I did receive the signed agreement yesterday. We will be sending you a check next Thursday (after the 7 day rescind period).
>
> Best,
>
> Pat
>
> -----Original Message-----
>
> From: Chris Fontana [mailto:chrisfontana68@gmail.com]
>
> Sent: Friday, May 27, 2016 12:55 PM
>
> To: Patricia Lecouras <PLecouras@chefswarehouse.com>

Subject: Re: Chris Fontana

Did you receive the separation agreement via ups?

Sent from my iPhone

> On May 25, 2016, at 10:14 AM, Patricia Lecouras <PLecouras@chefswarehouse.com> wrote:
>
> UPS Acct# X0861W
>
> UPS Acct Name: CW Corporate HQ (CT)
>
> -----Original Message-----
>
> From: Chris Fontana [mailto:chrisfontana68@gmail.com]
>
> Sent: Wednesday, May 25, 2016 12:29 PM
>
> To: Patricia Lecouras <PLecouras@chefswarehouse.com>
>
> Subject: Re: Chris Fontana
>
> Need the ups number
>
> Chris
>
> Sent from my iPhone
>
>> On May 24, 2016, at 11:47 AM, Patricia Lecouras <PLecouras@chefswarehouse.com> wrote:
>>
>> Chris,
>>
>> We are offering you a severance in the amount of $100,000 in consideration for your execution of the separation agreement.
>>
>> The offer is non-negotiable and will expire at 5 pm EST on Friday, May 27, 2016, if you do not accept it by then.
>>
>> Regards,
>>
>> Pat

Patricia Lecouras

Chief Human Resources Officer

100 East Ridge Road

Ridgefield, Connecticut 06877

Phone: 203-894-1345 x10150

Fax: 866-425-7968

plecouras@chefswarehouse.com

www.chefswarehouse.com

-----Original Message-----

From: Chris Fontana [mailto:chrisfontana68@gmail.com]

Sent: Monday, May 23, 2016 7:22 PM

To: Patricia Lecouras <PLecouras@chefswarehouse.com>

Subject: Chris Fontana

Thanks for the phone call , We have found some oddities in my termination process , and we don't feel the amount is appropriate.

I have been advised that $160 thousand would be more realistic.

Chris Fontana

Sent from my iPhone

---

---

**EXHIBIT B**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>CIVIL DIVISION<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878<br>(707) 521-6500<br>http://www.sonoma.courts.ca.gov<br><br>Fontana vs The Chef's Warehouse, Inc. | (FOR COURT USE ONLY)<br><br>ENDORSED<br>FILED<br>AUG 26 2016<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA |
|---|---|
| **NOTICE OF ASSIGNMENT TO ONE JUDGE FOR ALL PURPOSES, NOTICE OF CASE MANAGEMENT CONFERENCE, and ORDER TO SHOW CAUSE** | Case number:<br>SCV-259364 |

**A COPY OF THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT AND WITH ANY CROSS-COMPLAINT**

1. **THIS ACTION IS ASSIGNED TO HON. ALLAN D HARDCASTLE FOR ALL PURPOSES.** Pursuant to California Rules of Court, Rule 2.111(7), the assigned judge's name must appear below the number of the case and the nature of the paper on the first page of each paper presented for filing.

2. EACH DEFENDANT MUST FILE A WRITTEN RESPONSE TO THE COMPLAINT AS REQUIRED BY THE SUMMONS.

A Case Management Conference has been set at the time and place indicated below:

| Date: Thursday, 12/22/2016 | Time: 3:00 PM | Courtroom 19 |
|---|---|---|
| Location: 3055 Cleveland Avenue, Santa Rosa, CA 95403 | | |

3. No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement [Judicial Council form #CM-110] and serve it on all other parties in the case. In lieu of each party's filing a separate case management statement, any two or more parties may file a joint statement.

4. At the conference, counsel for each party and each self-represented party must appear personally or by telephone [California Rules of Court, Rule 3.670(c)(2)]; must be familiar with the case; and must be prepared to discuss and commit to the party's position on the issues listed in California Rules of Court, Rule 3.727.

5. Pre-approved dispositions are recorded three (3) court days prior to the case management conference. These may be obtained by calling (707) 521-6883 or by going to http://sonoma.courts.ca.gov/online-services/tentative-rulings.

**ORDER TO SHOW CAUSE**

To Plaintiff(s), Cross-complainants, and/or their attorneys of record:
If, on the date shown above, you are not in compliance with the requirements stated in the California Rules of Court, rules 2.30, 3.110, and/or 3.720 through 3.771 inclusive, you must then and there show cause why this court should not impose monetary and/or terminating sanctions in this matter.

Pursuant to California Rule of Court, rule 3.221(b), information and forms related to Alternative Dispute Resolution are available on the Court's website at http://www.sonoma.courts.ca.gov/self-help/adr.

## ELECTRONIC SERVICE OF DOCUMENTS

**Enabled by Local Rule 18.16**

Voluntary e-service is available in Sonoma County. The Court has pre-approved a Stipulation for cases in which the attorneys or parties choose e-service. A copy of the Stipulation is available under the "Civil" section in the "Division" tab of the Court website: http://www.sonoma.courts.ca.gov. The advantages of e-service to the parties include:

| | |
|---|---|
| **SAVE MONEY** | Reduction in costs related to photocopying, retrieving, storing, messenger and postage fees. No special software is needed to use e-service |
| **SAVE TIME** | Instant service of your documents on all parties |
| **SAVE SPACE** | With 24/7 internet access to all documents, you do not need to house paper copies |
| **GAIN CERTAINTY** | Immediate confirmation of service for your records. Documents are not delayed in the mail or blocked by email spam blockers and firewalls |

To take advantage of e-service, select an e-service provider and file the signed Stipulation with the Court. Parties can then e-serve documents through the selected provider. Information about e-service providers is available at the website for the Sonoma County Bar Association: http://www.sonomacountybar.org. The Court does not endorse one provider over another.

**To learn more about available e-service providers and their fees, please visit their website**

***Note:** Hard-copy pleadings are required to be filed with the Court in accordance with applicable provisions of the Code of Civil Procedure, California Rules of Court and local rules. You do not need to provide a courtesy copy of a served document to the specific department in which the matter has been assigned.*

## DISCOVERY FACILITATOR PROGRAM

Effective January 1, 2008, the Sonoma County Superior Court promulgated Sonoma County Local Rule 4.14 which established the Discovery Facilitator Program. Participation in the Discovery Facilitator Program shall be deemed to satisfy a party's obligation to meet and confer under Sonoma County Local Rule 5.5 and applicable provisions of the Code of Civil Procedure and California Rules of Court. This program has been providing assistance in resolving discovery disputes and reducing the backlog of matters on the law and motion calendars in our civil law departments. The Sonoma County Superior Court encourages all attorneys and parties to utilize the Discovery Facilitator Program in order to help resolve or reduce the issues in dispute whether or not a discovery motion is filed.

There is a link to Local Rule 4.14 and the list of discovery facilitator volunteers on the official website of the Sonoma County Superior Court at http://www.sonoma.courts.ca.gov. On the home page, under the "AVAILABLE PROGRAMS & HELP" section, click on »Discovery Facilitator Program. You can then click on either "Local Rule 4.14" to obtain the language of the local rule, or "List of Facilitators" for a list of the volunteer discovery facilitators and accompanying contact and biographical information.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address)<br><br>TELEPHONE NO.: FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
| **ADR INFORMATION SHEET**<br>**[Sonoma County Superior Court Rules, Rule 16]** | CASE NUMBER: |
| (Check one): ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | Date:<br>Time:<br>Location:<br>Assigned Judge: |

## NOTICE TO ALL PARTIES AND THEIR ATTORNEYS

The policy of the Sonoma County Superior Court is:

"The formal litigation of legal claims and disputes is expensive and time consuming. The overall results achieved by some or all of the parties are often unsatisfactory. There are many modern alternatives to formal court litigation which are less expensive, less time consuming, and more beneficial to the parties. It is therefore the firm policy and goal of this court to encourage the parties in all civil cases to explore and pursue private dispute resolution alternatives at the earliest possible date." (Local Rule 16.1.)

Although most (90-98%) cases do settle, many settlements come only after a considerable amount of time, money, and resources have been expended. Such expenditures, as well as the adversarial nature of litigation, can be a disincentive to settlement. The Sonoma County Superior Court encourages the use of Alternative Dispute Resolution (ADR) as early as possible after the parties become aware of a dispute.

Most ADR processes are voluntary and are paid for by the parties themselves, but ADR has proved in many cases to be faster, cheaper, and more effective than traditional litigation.

### ADVANTAGES OF ADR:

The filing of your complaint or answer may be just the beginning of the costs that you will incur during the course of your lawsuit. Lawsuits can be extremely costly. By utilizing ADR methods early in the course of your case, you may significantly reduce these costs by either resolving the case before expensive discovery and trial proceedings are commenced or by narrowing the scope of your discovery by identifying disputed and undisputed factual and legal issues.

ADR can be a fast, economical, efficient, and effective way to resolve civil cases, and most litigants report satisfaction with the process. ADR procedures can be scheduled at your convenience and can be completed in a fraction of the time required for traditional litigation. The cost of ADR will depend on the procedure and the provider you select, and the cost is typically less than litigation.

Most ADR processes are confidential but can result in enforceable agreements. Many ADR processes will give you an opportunity to test the strengths and weaknesses of your case without adverse impact in the event of a trial. Depending upon the method of ADR you select, it may be the last chance for you to control the outcome of your dispute before you place the decision in the hands of a judge or jury.

### METHODS OF ADR:

**A. MEDIATION:** Mediation is one of the most frequently used methods of ADR because it is informal, quick, convenient and confidential. In this process the parties select a neutral mediator who facilitates the identification of issues and areas of agreement and assists in finding a resolution or settlement of the dispute. Since mediation requires the agreement of the parties to resolve the matter, control of the proceedings and a determination of the settlement terms remains completely in the parties' hands. The mediator remains neutral and assists the parties in arriving at terms that are mutually agreeable.

| PLAINTIFF/PETITIONER: DEFENDANT/RESPONDENT: | CASE NUMBER: |
|---|---|

**B. ARBITRATION:** The parties jointly employ a neutral third party or a panel of neutrals to listen to both sides and render a decision. The parties are free to make the arbitrator's decision binding or non-binding. When non-binding, the arbitrator's decision serves as guide or influence upon the parties to bring them closer to settlement. If it is binding, the decision of the arbitrator will be final and generally avoids any further proceedings in the case. Non-binding judicial arbitration may be ordered in certain cases before trial.

**C. EARLY NEUTRAL EVALUATION:** A neutral evaluator is hired by the parties to give an evaluation of the case to help settle it. You or your attorney will be permitted to prepare a written statement, present critical witnesses or other evidence, argue your case to the evaluator, meet separately and confidentially with the evaluator, and utilize the evaluator to communicate any settlement offers to the opposing party.

**D. PRIVATE SETTLEMENT CONFERENCE:** A voluntary settlement conference is similar to early neutral evaluation in that the parties employ a neutral settlement officer who attempts to persuade the parties to accept a compromise position. It is a form of facilitated negotiation in which the settlement officer may express an opinion about the value of the case, the substantive merits of each party's position, and the probable outcome of the trial.

There are various other methods or combinations of methods of ADR, such as summary jury trial, mini-trial, special master and discovery referee. The court encourages the parties to be creative in selecting the process which has the best chance of resolving the case as quickly, effectively, and inexpensively as possible. You will have a chance to review your ADR options at the time of the Early Mediation and Case Management Conference.

**The undersigned party is willing to agree to any of the following forms of ADR at this time (for family law and probate actions only). Your selection will inform the other parties in the case of your current thoughts regarding the use of ADR. If all parties agree on a particular ADR method, you will be asked to file a stipulation on the court's form. The stipulation form (Sonoma County Superior Court form #MISC-101) can be found at the court's web site and is available at the court.)**

☐ Mediation

☐ Early Neutral Evaluation

☐ Non-binding Private Arbitration

☐ Binding Private Arbitration

☐ Voluntary Settlement Conference

☐ Summary Jury Trial

☐ Other ______________________________

☐ Judicial Arbitration

I / We certify that I / We have read and understood (or have had explained to me / us) the foregoing.

Date: ______________________ ______________________________
Signature of Party

Date: ______________________ ______________________________
Signature of Party

Date: ______________________ ______________________________
Signature of Attorney for Party

☐ Additional signatures are attached

**NOTE: This form requires the signatures of the parties and their attorney. All parties must complete, file and serve this form in accordance with Sonoma County Superior Court Rules, Rule 16. See Rule 16.3 for specific filing and service instructions.**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address)<br><br>TELEPHONE NO.: FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
| **STIPULATION AND ORDER REFERRING MATTER TO ALTERNATIVE DISPUTE RESOLUTION** | CASE NUMBER: |
| (Check one): ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | Date:<br>Time:<br>Location:<br>Assigned Judge: |

The parties hereby stipulate to refer the case to the following Alternate Dispute Resolution Process:

☐ Mediation
☐ Binding Private Arbitration
☐ Early Neutral Evaluation
☐ Non-binding Private Arbitration
☐ Private Settlement Conference
☐ Judicial Arbitration

The ADR process will be conducted by (name of individual): ______________________

Provider's Address: ______________________

Provider's Telephone: ____________ Fax: E-mail address: ______________________

☐ No agreement

The ADR process will be conducted on (date): ______________________.

☐ No agreement

☐ The parties have reached agreement as to the payment of fees of ADR provider.
☐ The parties have not reached agreement as to the payment of fees of ADR provider.

Type or print name of ☐ Party without attorney ☐ Attorney for ☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

______________________ **(Date and Sign)** Attorney or party without attorney (Sign in blue ink)

Type or print name of ☐ Party without attorney ☐ Attorney for ☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

______________________ **(Date and Sign)** Attorney or party without attorney (Sign in blue ink)

☐ Additional signatures are attached

| PLAINTIFF/PETITIONER:<br>DEFENDANT/RESPONDENT: | CASE NUMBER: |
|---|---|

**ORDER**

**A REVIEW HEARING IS SCHEDULED AS FOLLOWS:**

_______________________ Date      ____________ Time

All parties must appear at the Review Hearing. In the event that the case is settled and a dismissal, a notice of settlement or a judgment is filed at least 3 court days before the scheduled Review Hearing, the Review Hearing will be dropped and no one should appear. You must check the phone message at _________________ or go to http://sonoma.courts.ca.gov/online-services/tentative-rulings where the tentative dispositions will be posted the day before you are scheduled to come to court to determine if you must appear.

***THE FIRST ATTORNEY OR PARTY LISTED MUST FILE PROOF OF SERVICE OF A COPY OF THIS ORDER ON ALL PARTIES.***

_______________________ Date      _______________________ JUDGE OF THE SUPERIOR COURT

| ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name & Address*):<br><br>Telephone No.: FAX No.:<br><br>ATTORNEY FOR (Name): Bar No. | ***FOR COURT USE ONLY*** |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**<br>600 Administration Drive<br>Santa Rosa, CA 95403<br>Telephone: (707) 521-6500 | |
| PLAINTIFF(S)/PETITIONER(S): | |
| DEFENDANT(S)/RESPONDENT(S): | CASE NUMBER: |

**NOTICE OF SELECTION AS MEDIATOR IN COURT-CONNECTED MEDIATION**
(Sonoma County Superior Court Local Rule 16)

**Name of Mediator Selected:** ______________________________

**PLEASE TAKE NOTICE** that the above-referenced matter is subject to Sonoma County Superior Court Local Rule 16 (Rules Applicable to Alternative Dispute Resolution (ADR)). The parties have selected you to serve as the mediator in this matter. Sonoma County Superior Court has a voluntary, market rate mediation program. All mediations conducted in cases covered by Local Rule 16 are court-connected mediations and are subject to the provisions of California Rules of Court, Rules 3.850 et seq. It is your obligation to familiarize yourself with Local Rule 16 and California Rules of Court, Rules 3.850 et seq. before the mediation. **PLEASE NOTE:** you are required to have the parties complete an Attendance Sheet for Court-Program Mediation of Civil Case (Alternative Dispute Resolution) (Judicial Council form ADR-107) in accordance with California Rules of Court Rule 3.860. The form is available at the web site of the California Courts www.courtinfo.ca.gov.

In order to mediate this case, you must complete the acceptance below and sign it in the space provided. (See CRC 3.851 et. seq.) If you ***are not*** a member of the Sonoma County Superior Court Panel of Mediators, you must provide the completed Notice ***with your original signature*** to plaintiff (or to cross-complainant, if the Complaint has been dismissed), for filing and service as required by Local Rule 16.4. If ***you are*** a member of that Panel, you must file and serve copies as required by Local Rule 16.4, not less then five (5) days before commencement of the mediation.

If you are mediating a case referred to court-connected mediation, regardless of the date of the mediation, you are required to complete and return a Mediator's Questionnaire (Sonoma County Superior Court Local form CV-36) within five (5) days after completion or other termination of the mediation. The completed questionnaire should be sent to the ADR Program Coordinator at 3055 Cleveland Ave., Santa Rosa, CA 95403, or by fax to (707) 521-6756. The plaintiff should provide the Mediator's Questionnaire to you. The questionnaire is also available on the web site of the Sonoma County Superior Court www.sonoma.courts.ca.gov.

If you have any questions regarding your selection or service as a mediator in this matter or about the Sonoma County Superior Court ADR Program, please feel free to contact the ADR Program Coordinator at (707) 521-6511 or ADR@sonoma.courts.ca.gov.

**MEDIATOR'S ACCEPTANCE**

I, ______________________________ hereby agree to mediate the above-captioned matter subject to
(print name)

the conditions stated in this notice.

Dated: ____________________ ______________________________
(Mediator's Signature)

**MAIL TO:** ADR Program Coordinator, 3055 Cleveland Ave., Santa Rosa, CA 95403
**OR FAX TO:** (707) 521-6756

## SONOMA COUNTY SUPERIOR COURT CIVIL ADR PROGRAM
## ATTORNEY QUESTIONNAIRE (CONFIDENTIAL)

In accordance with Local Rule 16.4 B please submit completed questionnaire by FAX or mail ***within 5 (five) days*** of completion of mediation.

**This *confidential* information will be used to 1) evaluate the court's mediation program and 2) to report to the court and to the Administrative Office of the Courts regarding the impact of the court's mediation program for general civil cases. Information from this form will not be shared with the trial judge, other court staff, or other participants in the mediation and will be presented only in aggregate form, without attribution to you, any of the participants, or this case.**

Case Name: ______________________ Case Number: ______________

Name of Attorney: ______________________ Type of Case: ______________

### PART I - BACKGROUND INFORMATION

1. How many years have you practiced law? ☐ 1-5 ☐ 6-10 ☐ 11-15 ☐ more than 15
2. Have you taken any training or courses for mediators or mediation advocates? ☐ Yes ☐ No
3. Total # mediations in which you served as counsel: ☐ under 5 ☐ 6-10 ☐ 11-25 ☐ more than 25
4. How many parties were there in this case?

Plaintiffs _____ Defendants _____ Cross-complainants _____ Cross-defendants _____

5. What is your estimate of this case in terms of (1 = low and 5 = high):

| | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| Factual complexity | ☐ | ☐ | ☐ | ☐ | ☐ |
| Hostility between the parties | ☐ | ☐ | ☐ | ☐ | ☐ |
| Hostility between counsel | ☐ | ☐ | ☐ | ☐ | ☐ |

6. How much money in damages, including compensatory and punitive damages, was originally sought:

| **Up to:** | $25,000 | $50,000 | $100,000 | $500,000 | $1,000,000 | **over** $1,000,000 |
|---|---|---|---|---|---|---|
| Complaint | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Cross-complaint | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

7. Were non-monetary damages sought by any party? ☐ Yes ☐ No

### PART II - BEFORE MEDIATION

Listed in questions 8 and 10 below are actions the court might have taken to encourage mediation and benefits that you might have expected from mediation. Please indicate how important you feel each of the following was to your decision to use mediation in this case. Please mark "Not Applicable" if the court did not take a listed action or if you did not expect a listed benefit.

| 8. Court Actions: | **Important** | **Not Important** | **Not Applicable** |
|---|---|---|---|
| Court provided information about mediation at a Case Management Conference, through the clerk's office or on the court's website | ☐ | ☐ | ☐ |
| Court provided pro bono or low cost mediation | ☐ | ☐ | ☐ |
| Court actively encouraged mediation | ☐ | ☐ | ☐ |

**9.** Please indicate any other action by the court that you feel would have helped to encourage mediation in this case: ______

| **10.** Expected Benefits of Mediation: | **Important** | **Not Important** | **Not Applicable** |
|---|---|---|---|
| To get a better understanding of the strengths and weaknesses of the other parties' claims/defenses? | ☐ | ☐ | ☐ |
| To improve communication between the parties | ☐ | ☐ | ☐ |
| To increase likelihood of preserving the pre-litigation relationship between the parties | ☐ | ☐ | ☐ |
| To speed up resolution of the case | ☐ | ☐ | ☐ |
| To resolve the case with lower litigation costs | ☐ | ☐ | ☐ |
| To get a better outcome in the case | ☐ | ☐ | ☐ |
| To provide my client with a reality check | ☐ | ☐ | ☐ |

**11.** Please identify any benefit that is not listed above that you expected from mediation in this case and indicate whether you received that benefit: ______

**12.** From your perspective:

a. Was this case suitable for mediation? ☐ Yes ☐ No If not, why not: ______

______

b. Was the case ready for mediation? ☐ Yes ☐ No If not, why not: ______

______

**13.** How much discovery was completed before the mediation?

| | **Completed** | **Some** | **None** |
|---|---|---|---|
| Exchange of documents | ☐ | ☐ | ☐ |
| Interrogatories | ☐ | ☐ | ☐ |
| Party Depositions | ☐ | ☐ | ☐ |
| Inspection Demands | ☐ | ☐ | ☐ |
| Exchange of expert witness reports | ☐ | ☐ | ☐ |
| Expert witness depositions | ☐ | ☐ | ☐ |

**14.** Was enough discovery completed to allow for meaningful negotiations? ☐ Yes ☐ No

## PART III - THE MEDIATION PROCESS AND THE MEDIATOR

**15.** Mediators use a variety of techniques and tools to help parties to resolve their disputes. Thinking about the mediation in this case, please indicate the extent to which the mediator used or emphasized each of the following techniques, if any, and whether you think the technique was helpful in increasing the prospect for resolution of this case.

| | **Helpful** | **Not Helpful** | **Not Applicable** |
|---|---|---|---|
| Expressed his or her opinion about the outcome of the case or of any issue in the case | ☐ | ☐ | ☐ |
| Held private meetings with individual parties | ☐ | ☐ | ☐ |
| Engaged the parties in face to face discussions about dispute | ☐ | ☐ | ☐ |
| Helped the parties identify and consider different ways to settle the dispute | ☐ | ☐ | ☐ |

| | Helpful | Not Helpful | Not Applicable |
|---|---|---|---|
| Urged a party or parties to accept a specific settlement proposal | ☐ | ☐ | ☐ |
| Helped the parties to understand the adverse party's underlying needs and interests. | ☐ | ☐ | ☐ |
| Helped the parties to assess the strengths and weaknesses of their own positions | ☐ | ☐ | ☐ |
| Encouraged the parties to participate directly in the mediation | ☐ | ☐ | ☐ |

**16.** Please indicate how much you agree with each of the following statements regarding the mediator in this case

| | Yes | No | Not Applicable |
|---|---|---|---|
| I had sufficient time before the mediation to adequately prepare for the mediation | ☐ | ☐ | ☐ |
| My client and I had an adequate opportunity to explain my client's side of the story during mediation | ☐ | ☐ | ☐ |
| Mediation helped to improve communication between the parties | ☐ | ☐ | ☐ |
| Mediation helped move the case toward early final resolution | ☐ | ☐ | ☐ |
| Mediation resulted in a fair/reasonable outcome in this case mediation | ☐ | ☐ | ☐ |
| The cost of using mediation was affordable to my client | ☐ | ☐ | ☐ |
| The mediation process was fair | ☐ | ☐ | ☐ |
| I would recommend mediation to future clients | ☐ | ☐ | ☐ |
| I would recommend this mediator to future clients | ☐ | ☐ | ☐ |
| **17.** Overall, how satisfied or dissatisfied were you with each of the following: | | | |
| The mediation process in this case | ☐ | ☐ | ☐ |
| Outcome of the mediation in this case | ☐ | ☐ | ☐ |
| The ability and performance of the mediator | ☐ | ☐ | ☐ |
| The services provided by the court in this case | ☐ | ☐ | ☐ |
| The total litigation process in this case from your initial involvement through the mediation | ☐ | ☐ | ☐ |

## PART IV— CASE OUTCOME

**18.** Was the matter settled?

☐ before the mediation ☐ during the mediation ☐ after the mediation ☐ not settled

**If the case settled during mediation, please complete questions 19-21 and skip question 22; if the case did not settle, please skip questions 19-21 and complete question 22.**

**19.** Was the total dollar amount of the settlement, for or against your client

☐ Better than expected ☐ about as expected ☐ worse than expected

**20.** Was there any non-monetary relief in the settlement reached at the mediation? ☐ Yes ☐ No

**21.** Compared to your initial expectations about the mediation, was the outcome

☐ Better than expected ☐ about as expected ☐ worse than expected

**22.** If the case did not settle at or as a result of the mediation, please check all applicable factors that you feel were obstacles to settlement:

☐ Mediation was scheduled too early

☐ a necessary person did not participate or ☐ attended by telephone

☐ one or more sides appeared to lack sufficient authority to settle the case

One or more participants, including opposing counsel (check all that apply):

☐ were not prepared ☐ did not appear to understand the mediation process

☐ did not appear to be willing to negotiate ☐ were unwilling to participate for a sufficient time

☐ There were language barriers or other communication problems

☐ The parties could not afford sufficient hours of mediation time

☐ Other (Please specify): ______________________________

## PART IV — IMPACT OF MEDIATION ON LITIGATION COSTS

**22.** To assess the cost and time impacts of mediation, please give us your estimate of the amount of time you spent on the case and the costs to your client. Total costs include attorney's fees and all costs billed to the client but do not include amounts paid to settle the case or uncompensated losses.

**a.** Approximate total Attorney Hours billed on the case ____________

**b.** Approximate total Client costs charged ____________

**23.** Considering the typical litigation process, based on your experience, what additional costs will or would have been incurred to try this case?

**a.** Estimated total additional attorney hours to try the case ____________

**b.** Estimated total additional costs client would incur to try the case ____________

7. Any additional comments on the court services or the mediation would be appreciated ____________

______________________________

______________________________

______________________________

______________________________

______________________________

______________________________

______________________________

______________________________

______________________________

Print Form

Reset Form

**MAIL TO:** ADR Program Coordinator, 3055 Cleveland Ave., Santa Rosa, CA 95403
**OR FAX TO:** (707) 521-6756

## SONOMA COUNTY SUPERIOR COURT CIVIL ADR PROGRAM

## PARTY QUESTIONNAIRE (CONFIDENTIAL)

In accordance with Local Rule 16.4 B please submit completed questionnaire by FAX or mail ***within 5 (five) days*** of completion of mediation.

**This *confidential* information will be used to 1) evaluate the court's mediation program and 2) to report to the court and to the Administrative Office of the Courts regarding the impact of the court's mediation program for general civil cases. Information from this form will not be shared with the trial judge, other court staff, or other participants in the mediation and will be presented only in aggregate form, without attribution to you, any of the participants, or this case.**

Case Name: ______________________________ Case Number: ________________

Date of Mediation ______________

**1.** I am the: ☐ plaintiff ☐ defendant ☐ other ________________________________________

**2.** Have you participated in mediation or arbitration before? ☐ Yes ☐ No

**3.** If yes, did the arbitration or mediation resolve that matter? ☐ Yes ☐ No

**4.** Regarding the mediation in this case, please check all that apply:

☐ I was satisfied with the mediation process

☐ The mediation process was fair to all parties

☐ I had an adequate opportunity to prepare before the mediation

☐ I had an adequate opportunity to explain my side of the case during mediation

☐ The parties were allowed/encouraged to participate directly in the mediation

☐ The parties participated in face to face discussions regarding the dispute

☐ The process allowed all participants to be heard

☐ Communication between the parties was improved as a result of the mediation

☐ Mediation helped the parties to realistically assess the strengths and weaknesses of the claims and defenses in this case

☐ The parties came away with a better understanding of the other party's claims or defenses

☐ The mediation offered a safe and secure setting for discussing this dispute

☐ I did not feel unduly pressured by the mediator to reach a settlement

☐ The mediator helped the parties identify and consider options for settlement of the case

☐ The mediator understood all of the key issues in the dispute

☐ I would use this mediator again

☐ I would recommend this mediator to others

☐ The mediation helped the parties to reach an early resolution of the dispute

☐ Not counting any money damages that I paid to settle the case, the mediation reduced the total attorneys fees and costs I expected to pay in this case

☐ Other comments: ________________________________________________________________

__________________________________________________________________________________

__________________________________________________________________________________

**MAIL TO:** ADR Program Coordinator, 3055 Cleveland Ave., Santa Rosa, CA 95403
**OR FAX TO:** (707) 521-6756

## SONOMA COUNTY SUPERIOR COURT CIVIL ADR PROGRAM

## NON-PARTY PARTICIPANT QUESTIONNAIRE (CONFIDENTIAL)

In accordance with Local Rule 16.4 B please submit completed questionnaire by FAX or mail ***within 5 (five) days*** of completion of mediation.

**This *confidential* information will be used to 1) evaluate the court's mediation program and 2) to report to the court and to the Administrative Office of the Courts regarding the impact of the court's mediation program for general civil cases. Information from this form will not be shared with the trial judge, other court staff, or other participants in the mediation and will be presented only in aggregate form, without attribution to you, any of the participants, or this case.**

Case Name: ______________________________ Case Number: ________________

Date of Mediation ______________

1. I participated at the request of the: ☐ plaintiff ☐ defendant ☐ other ______________________________
2. Have you participated in mediation or arbitration before? ☐ Yes ☐ No
3. If yes, did the arbitration or mediation resolve that matter? ☐ Yes ☐ No
4. Regarding the mediation in this case, please check all that apply:

☐ I was satisfied with the mediation process

☐ The mediation process was fair to all parties

☐ I had an adequate opportunity to prepare before the mediation

☐ I had an adequate opportunity to participate during mediation

☐ The parties were allowed/encouraged to participate directly in the mediation

☐ The parties participated in face to face discussions regarding the dispute

☐ The process allowed all participants to be heard

☐ Communication between the parties was improved as a result of the mediation

☐ Mediation helped the parties to realistically assess the strengths and weaknesses of the claims and defenses in this case

☐ The parties came away with a better understanding of the other party's claims or defenses

☐ The mediation offered a safe and secure setting for discussing this dispute

☐ I did not feel any party was unduly pressured by the mediator to reach a settlement

☐ The mediator helped the parties identify and consider options for settlement of the case

☐ The mediator understood all of the key issues in the dispute

☐ I would use this mediator if I was a party to a dispute

☐ I would recommend this mediator to others

☐ The mediation helped the parties to reach an early resolution of the dispute

☐ Not counting any money damages paid to settle the case, I believe the mediation reduced the total attorney's fees and costs in this case

☐ Other comments: ____________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

**EXHIBIT C**

Michele J. Beilke (State Bar No. 194098)
mbeilke@reedsmith.com
Julia Y. Trankiem (State Bar No. 228666)
jtrankiem@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2800
Los Angeles, California 90071
Telephone: 213.457.8000
Facsimile: 213.457.8080

Attorneys for Defendants
THE CHEFS' WAREHOUSE WEST COAST, LLC (erroneously sued as THE CHEFS' WAREHOUSE, INC.) and DEL MONTE CAPITOL MEAT COMPANY, LLC

ENDORSED
FILED
NOV 08 2016
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SONOMA

CHRISTOPHER FONTANA,

Plaintiff,

vs.

THE CHEFS' WAREHOUSE, INC., a Delaware corporation, individually and dba DEL MONTE CAPITOL MEAT COMPANY, LLC; DEL MONTE CAPITOL MEAT COMPANY, LLC, a Delaware limited liability company; and DOES 1-50, inclusive,

Defendants.

Case No. SCV-259364

**DEFENDANTS' ANSWER TO PLAINTIFF CHRISTOPHER FONTANA'S COMPLAINT FOR DAMAGES**

Complaint filed: August 26, 2016

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Defendants The Chefs' Warehouse West Coast, LLC (erroneously sued as The Chefs' Warehouse, Inc.) and Del Monte Capitol Meat Company, LLC (collectively, "Defendants"), for themselves alone and for no other defendants, and in answer to the unverified Complaint for Damages of Plaintiff Christopher Fontana ("Plaintiff"), hereby allege as follows:

**GENERAL DENIAL**

Pursuant to the provisions of Section 431.30(d) of the California Code of Civil Procedure, Defendants deny generally and specifically each and every allegation contained in Plaintiff's Complaint, and further deny that Plaintiff has sustained damages in the sum or sums alleged, or any other sum at all, by reason of any act, breach or omission of any Defendant.

Without waiving or excusing any of Plaintiff's own burdens of proof and production of evidence, Defendants allege the following separate and distinct affirmative defenses to the purported causes of action set forth in the Complaint:

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim)**

1. The Complaint, and each purported cause of action in the Complaint, fails to state facts sufficient to constitute a valid claim for relief against any Defendant.

**SECOND AFFIRMATIVE DEFENSE**

**(Failure to Plead with Particularity)**

2. Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to plead his claims with sufficient particularity, including but not limited to his claims for intentional misrepresentation, promissory fraud, and negligent misrepresentation.

**THIRD AFFIRMATIVE DEFENSE**

**(Equitable Defenses)**

3. Defendants allege, based on information and belief, that Plaintiff's Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, by the doctrines of acquiescence, consent, estoppel, laches, unclean hands, promissory estoppel, and/or waiver.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**FOURTH AFFIRMATIVE DEFENSE**

**(Conduct Privileged/Sanctioned by Law)**

4. Defendants allege, based on information and belief, that Plaintiff's Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, because Defendants' actions were privileged or justified under applicable law, and Plaintiff therefore should be barred from recovery.

**FIFTH AFFIRMATIVE DEFENSE**

**(No Damages)**

5. Defendants allege, based on information and belief, that Plaintiff has suffered no damages as a result of any conduct of Defendants, and, therefore, Plaintiff cannot state a claim against Defendants.

**SIXTH AFFIRMATIVE DEFENSE**

**(No Causation)**

6. Defendants allege, based on information and belief, that Plaintiff's damages, if any, were proximately caused by Plaintiff's own acts or omissions, or the acts or omissions of some third party or parties, and that any judgment rendered against Defendants must be reduced or denied accordingly.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Comparative Fault)**

7. The purported damages and/or other injuries, if any, of which Plaintiff complains were directly and proximately caused by his own actions, including but not limited to his own negligence, fault, voluntary assumption of contractual obligations, and/or breach of contract.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Intervening Causes)**

8. Defendants allege, based on information and belief, that Plaintiff's damages, if any, are the proximate result of independent, intervening, or superseding causes unrelated to any conduct on the part of Defendants.

**NINTH AFFIRMATIVE DEFENSE**

**(No Proximate Cause)**

9. Defendants allege, based on information and belief, that Plaintiff's Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, by the absence of proximate cause between Defendants' acts and/or omissions, and Plaintiff's alleged losses or injuries.

**TENTH AFFIRMATIVE DEFENSE**

**(Failure of Consideration)**

10. Defendants allege, based on information and belief, that Plaintiff's Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, on the grounds of failure of consideration.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Frustration of Purpose)**

11. Defendants allege, based on information and belief, that Plaintiff's Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, due to frustration of purpose.

**TWELFTH AFFIRMATIVE DEFENSE**

**(No Punitive Damages)**

12. Defendants are informed and believe and on that basis allege that Plaintiff is precluded from recovering punitive damages, either in whole or in part, including because the award of punitive damages in whole or part would violate due process and the excessive fine clauses of the Fifth, Eighth and the Fourteenth Amendments of the United States Constitution, as well as, provisions of the California Constitution.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(No Attorneys' Fees)**

13. Plaintiff's Complaint as a whole, and each and every cause of action therein, fails to set forth any facts which would entitle Plaintiff to an award of attorneys' fees and Plaintiffs' request for attorneys fees is otherwise barred under applicable law and Plaintiff has not alleged any cognizable contractual or statutory basis for such relief.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Workers' Compensation Preemption)**

14. To the extent Plaintiff's Complaint as a whole, and each and every cause of action therein, alleges emotional injury, this Court lacks jurisdiction and any recovery is barred by the exclusivity of the remedy therefore under the California Workers' Compensation Act, Labor Code section 3200, *et seq.*

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Truth/Good Faith/Statements of Opinions)**

15. Any statements made by Defendants to Plaintiff are not actionable under applicable law because they were true and/or made in good faith, honestly, and not maliciously and/or were not false assertions of a fact or facts but rather statements of opinion.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Conditions Precedent)**

16. Any recovery on Plaintiff's Complaint as a whole, and each and every cause of action therein, is barred on the grounds that, as to the relevant agreement, Plaintiff has failed to fulfill conditions precedent to the enforcement of said agreement.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Repudiation)**

17. Any recovery on Plaintiff's Complaint as a whole, and each and every cause of action therein, is barred in that the terms of the relevant agreement was materially breached and repudiated by Plaintiff and Plaintiff, therefore, is entitled to no relief upon such contract.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate)**

18. Plaintiff's Complaint as a whole, and each and every cause of action therein, is barred because he failed to mitigate his alleged damages.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(Offset)**

19. Any entitlement that Plaintiff may have to damages is subject to offset.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**TWENTIETH AFFIRMATIVE DEFENSE**

**(Unjust Enrichment)**

20. Plaintiff's Complaint as a whole, and each and every cause of action therein, is barred because it would result in unjust enrichment to Plaintiff.

**ADDITIONAL AFFIRMATIVE DEFENSES**

To the extent not set forth herein, Defendants reserve the right to assert additional defenses that become available or apparent during discovery and to amend their Answer accordingly.

WHEREFORE, Defendants pray for judgment as follows:

a. That Plaintiff's Complaint be dismissed in its entirety and that Plaintiff take nothing by reason thereof;

b. That Defendants recover their costs of suit incurred herein;

c. That Defendants recover their reasonable attorneys' fees incurred herein;

d. That judgment be entered in favor of Defendants; and

e. For such other and further relief as the Court deems just and proper.

DATED: November 8, 2016

REED SMITH LLP

By: ______________________
Julia Y. Trankiem
Attorneys for Defendants
THE CHEFS' WAREHOUSE WEST COAST, LLC (erroneously sued as THE CHEFS' WAREHOUSE, INC.) and DEL MONTE CAPITOL MEAT COMPANY, LLC

**PROOF OF SERVICE**
*Christopher Fontana v. The Chef's Warehouse, Inc., et al.*
*Sonoma Superior Court; Case No.: SCV-259364*

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is REED SMITH LLP, 355 South Grand Avenue, Suite 2900, Los Angeles, CA 90071-1514. November 8, 2016, I served the following document(s) by the method indicated below:

**DEFENDANTS' ANSWER TO PLAINTIFF CHRISTOPHER FONTANA'S COMPLAINT FOR DAMAGES**

| | |
|---|---|
| ☐ | by transmitting via facsimile on this date from fax number +1 213 457 8080 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 PM and was reported complete and without error. The transmission report, which is attached to this proof of service, was properly issued by the transmitting fax machine. Service by fax was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal.R.Ct 2003(3). |
| ☒ | by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration. |
| ☐ | by placing the document(s) listed above in a sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below. |
| ☐ | by personally delivering the document(s) listed above to the person(s) listed below at the addresses listed below. |
| ☐ | by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below. A copy of the consignment slip is attached to this proof of service. **VIA UPS** |
| ☐ | by transmitting via email to the parties at the email addresses listed below: |

| | |
|---|---|
| Sarah S. Wright, Esq.<br>The Wright Law Office<br>1629 Fifth Ave.<br>San Rafael, CA 94901 | ***Attorneys for Plaintiff Christopher Fontana***<br><br>T: 415-472-5900<br>F:<br>wirightlawmarin@gmail.com |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on November 8, 2016 at Los Angeles, California.

Claudia M. Alaniz



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**OFFICIAL RECEIPT**

Superior Court of California, County of Sonoma
www.sonoma.courts.ca.gov
(707) 521-6500

Receipt No. **2016-007718**
Transaction Date 11/08/2016
Payor
Oakland Service of Process
184 13th st #3
oakland ca 94612

| Description | Amount Paid |
|---|---|
| Del Monte Capital Meat Company, LLC<br>SCV-259364<br>Fontana vs The Chef's Warehouse, Inc. | |
| Answer/Other First Pape | 435.00 |
| **SUBTOTAL** | **435.00** |
| Remaining Balance Due: | 0.00 |
| The Chef's Warehouse West Coast, LLC<br>SCV-259364<br>Fontana vs The Chef's Warehouse, Inc. | |
| Answer/Other First Pape | 435.00 |
| **SUBTOTAL** | **435.00** |
| Remaining Balance Due: | 0.00 |
| **PAYMENT TOTAL** | **870.00** |
| Check (Ref #33067) Tendered | 870.00 |
| Total Tendered | **870.00** |
| Change | 0.00 |

11/08/2016 03:05 PM — Cashier Station 408HL02 — Audit 3294595

**OFFICIAL RECEIPT**

**PROOF OF SERVICE**

*Christopher Fontana v. The Chef's Warehouse, Inc., et al.*

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is REED SMITH LLP, 355 South Grand Avenue, Suite 2900, Los Angeles, CA 90071. On November 9, 2016, I served the following document(s) by the method indicated below:

**NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446 (DIVERSITY)**

| | |
|---|---|
| ☐ | BY CM/ECF ELECTRONIC DELIVERY: In accordance with the registered case participants and in accordance with the procedures set forth at the Court's website www.ecf.cand.uscourts.gov |
| ☒ | by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. (See attached Service List) I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration. |
| ☐ | by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below. |
| ☐ | by transmitting via email to the parties at the email addresses listed below: |

| | |
|---|---|
| Sarah S. Wright, Esq.<br>The Wright Law Office<br>1629 Fifth Ave.<br>San Rafael, CA 94901 | ***Attorneys for Plaintiff Christopher Fontana***<br><br>T: 415-472-5900<br>F:<br>wirightlawmarin@gmail.com |

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on November 9, 2016, at Los Angeles, California.

Claudia M. Alaniz

REED SMITH LLP
A limited liability partnership formed in the State of Delaware