UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER FONTANA, <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>THE CHEFS' WAREHOUSE INC., et al., <br><br>　　　　Defendants. | Case No.16-cv-06521-HSG <br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION** <br><br>Re: Dkt. No. 20 |

Pending before the Court is Defendants' motion to compel arbitration. Dkt. No. 20. For the reasons articulated below, the Court GRANTS the motion.

## I. BACKGROUND

Plaintiff Christopher Fontana filed this action on August 26, 2016, in Sonoma County Superior Court claiming that his former employer did not pay him his severance package. *See* Dkt. No. 1. Defendants Del Monte Capitol Meat Company, LLC and The Chef's Warehouse West Coast, LLC removed the case to federal court on November 9, 2016. *Id.*

According to Plaintiff, he began working for Del Monte in 1996. Dkt. No. 1, Ex. A ¶ 6 ("Compl."). The Chef's Warehouse acquired Del Monte in 2015. *See id.* ¶ 8. As part of Plaintiff's ongoing employment with them, he signed the Del Monte Arbitration Agreement ("Arbitration Agreement") in March 2015. Dkt. No. 20-2, Ex. A; *see also* Compl. ¶ 7. Paragraph 2 provides:

> [A]ll disputes . . . that may have arisen prior to, during or after the date of execution of this Agreement shall be subject to resolution only through final and binding arbitration with the American Arbitration Association ("AAA") . . . . The claims covered by this Agreement include, but are not limited to, any and all controversies, claims, or disputes between the Company and Employee arising out of, relating to, or resulting from the terms and conditions of

> Employee's employment with the Company or the termination of the Employee's employment with the Company . . . .

Dkt. No. 20-2, Ex. A ¶ 2. Both Plaintiff and Del Monte's Human Resources manager signed the Arbitration Agreement. *Id.* at 3.

In May 2016, Defendants terminated Plaintiff and offered him a Confidential Settlement and General Release ("Severance Agreement"). Compl. ¶ 9; *see also* Compl., Ex. 1 (copy of partially executed agreement). Plaintiff attempted to re-negotiate and requested additional compensation. Compl. ¶ 11. Defendants refused and said the as-is offer would expire on May 27, 2016. *Id.* ¶ 12. Plaintiff signed the Severance Agreement and returned it to Defendants. *Id.*; *see also* Dkt. No. 23 at 2. On May 27, Defendants' Chief Human Resources Officer acknowledged that she had received it and would send a check by June 2. Compl. ¶ 14. Instead, Defendants never signed the agreement and e-mailed Plaintiff on June 1 to say that they were rescinding the Severance Agreement. *Id.* ¶ 15; *see also* Compl., Ex. 1 (Severance Agreement).

The Severance Agreement does not contain an arbitration clause. Instead it includes a severability clause if "a court of competent jurisdiction" determines that "any term or provision of this Agreement is . . . void or invalid at law." Compl., Ex. 1 ¶ 16. It also contains an integration clause: "[T]he terms and conditions of this Agreement cancel and supersede any prior agreements, promises, representations or understandings that may have existed between Fontana and Del Monte with respect to all matters covered by this Agreement [with the exception of any prior confidentiality agreements]." *Id.* ¶ 12. Plaintiff argues that this dispute is governed by the Severance Agreement and the severability clause permits the Court to adjudicate the dispute. Defendants filed the pending motion to compel arbitration pursuant to the Arbitration Agreement.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

If the party seeking arbitration establishes that (1) the parties agreed to arbitrate and (2) the scope of that agreement to arbitrate encompasses the claims at issue, a court must compel arbitration. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In such cases, the party opposing arbitration bears the burden of establishing a defense to the agreement's enforcement by a preponderance of the evidence. *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 413 (1996). "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). Furthermore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (quotation omitted).

That said, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation omitted). To determine whether a valid and enforceable agreement to arbitrate has been established, courts "should apply ordinary state-law principles that govern the formation of contracts" to decide whether the parties agreed to arbitrate a certain matter. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial of an action upon any issue referable to arbitration under an agreement in writing for such arbitration." *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quotation omitted). If all of the claims in the litigation are subject to a valid arbitration agreement, the court may dismiss or stay the case. *Farrow v. Fujitsu Am., Inc.*, 37 F. Supp. 3d 1115, 1118 (N.D. Cal. 2014).

### III. ANALYSIS

Defendants move to compel arbitration in accordance with the Arbitration Agreement, but Plaintiff argues that the partially-executed Severance Agreement governs instead and permits adjudication of the dispute in court. The arbitrability of a claim turns on the existence of a valid contract; a motion to compel arbitration "is in essence a suit in equity to compel specific performance of [that contract]." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1125 (9th Cir.

2008) (citing *Wagner Constr. Co. v. Pac. Mech. Corp.*, 41 Cal. 4th 19, 58 (Cal. 2007)).

Here, there is no dispute that both parties signed the Arbitration Agreement. *See, e.g.*, Dkt. No. 23 at 2. And the scope of the Arbitration Agreement is broad. It includes "any and all controversies, claims, or disputes between the Company and Employee arising out of, relating to, or resulting from . . . the termination of the Employee's employment with the Company . . . ." Dkt. No. 20-2, Ex. A ¶ 2. Plaintiff's allegation that Defendants failed to pay him his severance package arises out of, relates to, and results from his termination with Defendants. Because the Court finds that the parties agreed to arbitrate, and the scope of that agreement to arbitrate encompasses the claims at issue, the Court must compel arbitration. *See Chiron Corp.*, 207 F.3d at 1130.

Plaintiff asks the Court to conclude that this agreement was nevertheless superseded by the Severance Agreement. However, Plaintiff offers no factual or legal authority to support this contention. The Arbitration Agreement explicitly states that *both* parties must execute any document modifying its terms, including the company's president. *See* Dkt. No. 20-2, Ex. A ¶ 5. And here, Plaintiff has not provided evidence that the unsigned Severance Agreement is a valid contract at all, let alone one that superseded the Arbitration Agreement.

"When it is clear . . . that the proposed written contract would become operative *only* when signed by the parties[], the failure to sign the agreement means no binding contract was created." *Basura v. U.S. Home Corp.*, 98 Cal. App. 4th 1205, 1216 (Cal. Ct. App. 2002), *as modified* (June 27, 2002) (quoting *Banner Entm't, Inc. v. Superior Court*, 62 Cal. App. 4th 348, 358 (Cal. Ct. App. 1998), *as modified* (Mar. 30, 1998)); *Angell v. Rowlands*, 85 Cal. App. 3d 536, 541 (Cal. Ct. App. 1978); *cf. Sangerman v. Theriault Enters. Inc.*, No. C-05-04183 RMW, 2007 WL 707502, at *2 (N.D. Cal., Mar. 6, 2007) (holding that parties were bound by unsigned settlement agreement because the parties orally agreed to terms before drafting agreement and there was no evidence that settlement was conditioned on parties' signatures); *see also* Cal. Civ. Code § 1436 ("A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed.").

Here, Plaintiff acknowledges that the Severance Agreement is not fully executed. *See* Dkt.

No. 23 at 2. The agreement states in relevant part that "[i]ntending to be legally bound, Christopher Fontana and Del Monte each knowingly and voluntarily execute this [agreement] as of the dates set forth below." *See* Compl., Ex. 1. The signature line for Defendants is blank. *Id.*; *see also* Dkt. No. 23 at 2. And Plaintiff presented no evidence that, contrary to the language of the Severance Agreement, the parties otherwise agreed that assent to the Severance Agreement could be manifested in some other manner. Under California contract law, the Severance Agreement would only be valid if both Plaintiff and Del Monte signed it. An email from Defendants' Chief Human Resources Officer is no substitute. Moreover, to the extent there is any lingering doubt as to whether arbitration is appropriate, the Arbitration Agreement contains a delegation clause giving the arbitrator the authority to resolve such disputes: "The arbitrator shall have the exclusive authority to resolve any dispute relating to the formation, interpretation, applicability and enforceability of this Agreement, including, without limitation, all issues regarding the arbitrability of any claim . . . ." Dkt. No. 20-2, Ex. A ¶ 3; *see also Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 242 (Cal. Ct. App. 2014) (upholding delegation clause as long as it is "clear and unmistakable" and is "not [] revocable under state contract defenses such as fraud, duress, or unconscionability"); *cf. Simula, Inc.*, 175 F.3d at 719 (9th Cir. 1999) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is GRANTED. This action is hereby STAYED pending resolution of the arbitration. The clerk is directed to administratively close the case.

**IT IS SO ORDERED.**

Dated: 6/15/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge